IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DEPUY SYNTHES SALES, INC.      :
                                  :          CIVIL ACTION
      v.                        :
                                  :          NO.  17-1068
GLOBUS MEDICAL, INC., MICHAEL  :
FOLEY, JEREMY D. LEARY, and    :
MICHAEL VALERI                :


O'NEILL, J.                                           April 26, 2017

## <u>MEMORANDUM</u>

Plaintiff DePuy Synthes Sales, Inc. initiated the present action seeking injunctive relief

and monetary damages against defendants Globus Medical, Inc., Michael Foley, Jeremy Leary

and Michael Valeri in connection with Globus Medical's alleged poaching of DePuy Synthes'

employees, customer relationships and goodwill. Following plaintiff's motion for preliminary

injunction, defendants moved to dismiss the entire complaint. For the following reasons, I will

grant defendants' motion to dismiss in part and deny it in part.

### FACTUAL BACKGROUND

### I.      **DePuy Synthes' Business Generally**

According to the facts set forth in the complaint, plaintiff DePuy Synthes is a leader in

the highly competitive medical device industry. Compl. ¶ 21. DePuy Synthes designs,

manufactures, markets and sells medical implants and instrumentation such as plates, screws,

rods and other devices used in orthopedic surgeries for internal fixation of broken bones and for

spinal and facial surgery. Id. ¶ 21. It then markets and sells its products through a sales force

primarily comprised of sales consultants who are assigned to specific territories and, in many

instances, work with and under regional team leaders.  Id. ¶ 23.  DePuy Synthes generally pays its sales consultants on a commission basis and provides incentives and enhanced commissions to promote growth within the consultants' assigned territories.  Id. ¶ 24.  In addition to selling products, sales consultants are expected to assist surgeons in the operating room when DePuy Synthes products are used and, as a result, sales consultants' relationships with their physician customers are key factors necessary to grow and maintain the business.  Id. ¶ 25.  DePuy Synthes' customers include group purchasing organizations and integrated delivery networks; health systems; hospitals and surgery centers and their materials management, operating room, sterile processing, purchasing and relating personnel; and physicians and their partners, employees and staff nurses.  Id. ¶ 26.

DePuy Synthes invests significant time, effort and money to develop its confidential information, training programs, customer relationships and related goodwill.  Id. ¶ 27.  To protect these investments, it requires all sales employees to sign an employee agreement, which contains obligations that protect against the use or disclosure of confidential information, the solicitation and servicing of its customers, the solicitation of its employees to leave their employment, disloyalty during employment and the efficient transition of responsibilities in the event of a termination.  Id. ¶ 27.

## II.	Globus Medical's History of Competition With DePuy Synthes

Globus Medical, Inc. is a direct competitor of DePuy Synthes.  Id. ¶ 28.  Its founding became the subject of a three-year federal action involving allegations that Globus Medical and two of its top executives, who were former DePuy Synthes employees, stole DePuy Synthes' trade secrets and confidential information and breached their employee contracts.  Id. ¶ 29.  That litigation settled in August 2007.  Id. ¶ 30.

According to the complaint, Globus Medical has continued "poaching" DePuy Synthes employees in violation of their employment agreements. Id. ¶ 30. This conduct became the subject of at least six state and federal lawsuits, which culiminated in a global settlement of all claims on September 23, 2010. Id. ¶ 31. Following DePuy Synthes' merger with and into a subsidiary of the Johnson & Johnson family of companies on June 14, 2012, however, Globus Medical purportedly resumed poaching DePuy Synthes employees. Id. ¶ 32. The February 2017 recruitment and hiring of defendants Michael Foley, Jeremy Leary and Michael Valeri (collectively, "the Sales Consultants") are among the most recent examples of Globus Medical's alleged conduct. Id. ¶ 33.

## III.    The Sales Consultants

Defendant Michael Foley was a sales consultant in the spine division of DePuy Synthes' business, and was assigned the Central Jersey territory encompassing customers such as John F. Kennedy Medical Center, Robert Wood Johnson University Hospital, University Surgery Center and Saint Peter's University Hospital, as well as the physicians and staff affiliated with those locations. Id. ¶ 34. On November 14, 2014, DePuy Synthes hired Foley as a sales consultant from his previous employment with Spinal Concepts (a contracted DePuy Synthes distribution company), at which time Foley executed his DePuy Synthes employment agreement. Id. ¶ 35.

Defendant Jeremy Leary was a sales consultant in the spine division of DePuy Synthes' business, and was assigned the Jersey Coast territory encompassing customers such as Bayshore Community Hospital, Jersey Shore University Medical Center, Monmouth Medical Center, Ocean Medical Center, Riverview Medical Center, Southern Ocean Medical Center and Surgicare Surgical Associates of Freehold, as well as the physicians and staff affiliated with those locations. Id. ¶ 36. On November 14, 2014, DePuy Synthes hired Leary as a sales

consultant from his previous employment with Spinal Concepts, at which time Leary executed his DePuy Synthes employment agreement.  Id. ¶ 37.

Defendant Michael Valeri served as the team leader for the Central Jersey and Jersey Coast territories working in collaboration with Foley and Leary and having shared responsibility for the customers in those territories.  Id. ¶ 38.  On November 14, 2014, DePuy Synthes hired Valeri as a sales consultant from his previous employment with Spinal Concepts, at which time Valeri executed his DePuy Synthes employment agreement.  Id. ¶ 39.

The Sales Consultants worked collaboratively regarding business in the team's territories, business planning and strategy, customer engagement and competitive threats and responses.  Id. ¶ 40.  To fulfill their responsibilities, they had access to confidential information related to the business in their territories and beyond, including periodic and year-end sales data, performance rankings, sales by pathology and product line and customer or GPO-specific pricing and discounts, as well as information related to DePuy Synthes' research and development plans and strategy and sensitive discussions between DePuy Synthes and its customers related to the development and rollout of new products and the refinement of existing products.  Id.  ¶ 41.  The complaint alleges, upon information and belief, that some of this confidential information may have been transmitted to the Sales Consultants' personal email accounts.  Id.

In connection with DePuy Synthes' transition to a direct-sales model and the termination of its distribution relationship with Spinal Concepts, and to protect the customer relationships and goodwill belonging to DePuy Synthes, Spinal Concepts assigned all rights it had in any agreements with Foley, Leary and Valeri, including any rights in non-competition and non-solicitation obligations owed to Spinal Concepts, and confirmed the assignment of all rights and intangibles, including goodwill associated with customers, to DePuy Synthes.  Id. ¶ 42.

The Sales Consultants received specialized training on the technical aspects of DePuy Synthes' products and the medical procedures in which these products are used, techniques for educating operating room personnel and surgeons during medical procedures and the use of new and existing implants and instrumentation. Id. ¶ 43. They also received access to confidential information regarding DePuy Synthes' contract and sales administration, personnel and other departments; DePuy Synthes' customers; and business activities such as pricing, marketing and sales strategies, competitive responses and product development research, pipelines and release schedules. Id. ¶¶ 43–44. DePuy Synthes further provided the Sales Consultants with direct access to DePuy Synthes' customer relationships and made them responsible for maintaining, nurturing and developing those relationships to grow DePuy Synthes' business. Id. ¶ 46.

## IV.    The Employment Agreements

To protect these investments, as well as its customer relationships and goodwill, DePuy Synthes required the Sales Consultants to enter into employment agreements as a condition of their employment. Id. ¶ 47. The agreements contained prohibitions on: (a) directly or indirectly doing anything during their employment with DePuy Synthes to impair its business or customer relationships, including informing customers of future employment or services, competing products or services or recruiting or soliciting fellow DePuy Synthes employees to join a competitor; (b) directly or indirectly competing with DePuy Synthes in assigned sales territories both during their employment and or an eighteen-month period following termination of their employment, including from assisting others in such competition; (c) directly or indirectly contacting, soliciting or servicing DePuy Synthes customers for which they had any responsibility or with which they had any contact both during their employment for an eighteen-month period following their termination; and (d) disclosing or using DePuy Synthes'

confidential and business information about DePuy Synthes' customers that is not publicly known and was obtained by them during their employment. Id. ¶ 48. In addition, the agreements included a commitment to provide DePuy Synthes with two-weeks' notice of a resignation to facilitate a smooth transition of case coverage and responsibilities, to minimize disruption of patient care and to ensure compliance with fiduciary and contractual obligations. Id.

## V.     The Sales Consultants' Alleged Conduct in Violation of Their Agreements

The complaint alleges, upon information and belief, that the Sales Consultants initially planned to join Globus Medical beginning in February 2016, but remained employed by DePuy Synthes throughout 2016, delaying their resignations until February 2, 2017, when they collectively notified DePuy Synthes of their plans to leave. Id. ¶ 66. Although the Sales Consultants originally communicated their intent to comply with their two-week notice and transition obligations, they informed DePuy Synthes that at least one of them had been "advised heavily against" remaining with DePuy Synthes for the transition. Id. ¶ 67. As such, they opted to terminate their relationship with DePuy Synthes and begin working for Globus immediately. Id. Their last day with DePuy Synthes was February 3, 2017.

According to the complaint, the Sales Consultants met as a team in April 2016 to assess the business and competitive threats in their assigned territories and to plan jointly the business strategies and goals for the remainder moving forward. Id. ¶ 68. During this time, they maintained access to DePuy Synthes' resources, confidential information, customer relationships and associated goodwill. Id. ¶ 69.

The Sales Consultants began their employment with Globus Medical on February 6, 2017. Id. ¶ 71. On that day, several surgical cases that had previously been scheduled for the

use of DePuy Synthes spine products were converted to Globus.  Id.  This conversion required advanced planning, including the delivery and preparation of surgical trays and sets containing Globus products for use in the surgery and staffing by Globus employees to cover the surgery. Id.

Having abruptly terminated their positions, the Sales Consultants left DePuy Synthes without effective cover and transition for the accounts in their territories, without effective transition for patient care with respect to scheduled surgical cases and without giving DePuy Synthes the time to ensure that the Sales Consultants would comply with the obligations in their employee agreements.  Id. ¶ 72.  In response to DePuy Synthes' initial demands, the Sales Consultants promised to not interact with customers in the field for a two-week period to allow DePuy Synthes to investigate the Sales Consultants' anticipated roles and responsibilities for Globus.  Id. ¶ 73.  According to the complaint, however, defendants  provided no such clarity as to their new positions and simply recommenced employment in their new sales roles with Globus Medical on February 20, 2017.  Id.

Globus Medical knew from its history of litigation with DePuy Synthes that DePuy Synthes maintains and enforces restrictive covenants in its employment agreements with its sales employees.  Id. ¶ 74.  The responsible decision-makers at Globus Medical, and the Sales Consultants themselves, were well-aware of the contractual obligations that the Sales Consultants each owed to DePuy Synthes.  Id. ¶ 75.  DePuy Synthes alleges, however, that Globus recognized an opportunity to poach a significant portion of DePuy Synthes' New Jersey spine sales force in order to convert DePuy Synthes' business, customer relationships and goodwill to Globus Medical and to exploit the Sales Consultants' training and access to DePuy Synthes' confidential information.  Id. ¶ 76.  Indeed, the Sales Consultants are employed by

Globus Medical within the geographic territory covered by their former DePuy Synthes team in violation of their agreements.  Id. ¶ 78.  Plaintiff believes that defendants intend to directly and indirectly solicit and service customers from the Sales Consultants' assigned DePuy Synthes territories, and intend to "flout and interfere with the Sales Consultants' non-competition and non-solicitation obligations going forward."  Id. ¶¶ 79–80.  Moreover, DePuy Synthes alleges that the Sales Consultants, with the support of Globus Medical, have already undertaken unlawful competitive activities and began soliciting DePuy Synthes customers on behalf of Globus Medical prior to their resignation.  Id. ¶¶ 80–81.

## VI.    Procedural History

Plaintiff DePuy Synthes commenced the current litigation on March 9, 2017.  Its complaint sets forth six causes of action as follows:  (1) breach of fiduciary duty and/or duty of loyalty against the Sales Consultants; (2) breach of contract against the Sales Consultants; (3) aiding and abetting breach of fiduciary duty against all defendants; (4) tortious interference with contractual relationships and prospective business relations against all defendants; (5) unfair competition against all defendants; and (6) conspiracy against all defendants.  Plaintiff also filed a motion for preliminary injunction on March 10, 2017.

On April 5, 2017, defendants filed the current motion to dismiss for failure to state a claim.  Defs.' Mot to Dismiss, Dkt. No. 19.  Plaintiff responded on April 10, 2017, Pl.'s Resp. Opp'n Mot. to Dismiss, Dkt. No. 21, and Defendants filed a reply brief on April 17, 2017, Defs.' Reply Br., Dkt. No. 23, making the motion ripe for consideration.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R.

Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id., quoting Iqbal, 556 U.S. at 679. The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id., quoting Iqbal, 556 U.S. at 679.

## DISCUSSION

## I.     Breach of Fiduciary Duty Claim

Defendants contend that plaintiff's breach of fiduciary duty claim fails for two independent reasons. First, they assert that the claim is barred under the "gist of the action

doctrine" as it is derivative of and identical to plaintiff's breach of contract claim. Second, they argue that the complaint is devoid of factual allegations suggesting that the Sales Consultants breached any duty to DePuy Synthes during the term of their employment. As I find that the gist of the action doctrine bars the claim, I focus solely on this portion of defendants' argument.

As a general rule, Pennsylvania[1] courts are cautious about permitting tort recovery on contractual breaches. Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964); eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10 (Pa. Super. Ct. 2002). In Bruno v. Erie Ins. Co., 106 A.3d 48 (Pa. 2014), the Pennsylvania Supreme Court reaffirmed the long-standing principle that the "gist of the action" doctrine precludes a tort claim "based on [a] party's actions undertaken in the course of carrying out a contractual agreement . . . when the gist or gravamen of the cause of action . . . . although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." Id. at 53. The simple existence of a contract between two parties "does not, *ipso facto,* classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." Id. at 69. The doctrine, however, forecloses a party's pursuit of a tort action for the mere breach of contractual duties, "'without any separate or independent event giving rise to the tort.'" Smith v. Lincoln Benefit Life Co., No. 08-1324, 2009 WL 789900, at *20 (W.D. Pa. Mar. 23, 2009), aff'd, 2010 WL 3730196 (3d Cir. Sep. 24, 2010), quoting Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp. 2d 329, 340 (E.D. Pa. 2003).

"[T]o evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because 'the nature of the duty alleged to have been breached . . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of

---

[1]    For purposes of this motion, the parties appear to agree that Pennsylvania law applies to plaintiff's tort claims.

contract.'" Downs v. Andrews, 639 F. App'x 816, 819 (3d Cir. 2016), quoting Bruno, 106 A.3d

at 68. To make this determination, the court must look at the substance of the allegations

comprising a claim, without regard to the labeling of a claim by the plaintiff, and ascertain the

source of the duties allegedly breached, Downs, 639 F. App'x at 819; Synthes, Inc. v. Emerge

Med., Inc., 25 F. Supp. 3d 617, 724 (E.D. Pa. 2014). As explained by the Pennsylvania Supreme

Court:

> If the facts of a particular claim establish that the duty breached is
> one created by the parties by the terms of their contract—i.e, a
> specific promise to do something that party would not ordinarily
> have been obligated to do but for the existence of the contract—
> then the claim is to be viewed as one for breach of contract. . . . If,
> however, the facts establish that the claim involves the violation of
> a broader social duty owed to all individuals, which is imposed by
> law of torts and, hence, exists regardless of the contract, then it
> must be regarded as a tort.

Bruno, 106 A.3d at 68. Although the gist of the action doctrine "call[s] for a fact-intensive

judgment as to the true nature of a claim," Williams v. Hilton Grp. PLC, 93 F. App'x 384, 386

(3d Cir. 2004), whether the gist of the action doctrine applies in any particular setting is a

question of law. Alexander Mill Servs., LLC v. Bearing Distrib., Inc., No. 06-1116, 2007 WL

2907174, at *8 (W.D. Pa. Sep. 28, 2007).

"A breach of fiduciary duty claim is barred by the gist of the action doctrine if the

fiduciary duty alleged is grounded in contractual obligations." Alpart v. Gen. Land Partners,

Inc., 574 F. Supp. 2d 491, 499 (E.D. Pa. 2008). The cases that evaluate whether breach of

fiduciary duty claims are barred by the gist of the action doctrine can be grouped generally into

two categories. Certainteed Ceilings Corp. v. Aiken, No. 14-3925, 2015 WL 410029, at *9 (E.D.

Pa. Jan. 29, 2015). "First, . . . claims for breach of fiduciary duty are not barred if the fiduciary

duty at issue goes 'beyond the particular obligations contained in' the parties' contract." Id.

citing Bohler-Udeeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 105 (3d Cir. 2001); Rahemtulla v. Hassam, 539 F. Supp. 2d 755, 779 (M.D. Pa. 2008); Orthovita, Inc. v. Erbe, No. 07-2395, 2008 WL 423446, at *7–8 (E.D. Pa. Feb.14, 2008); Murphy v. Mid E. Oil Co., No. 06-1343, 2007 WL 527715, at *6–7 (W.D. Pa. Feb.14, 2007).  "Second, . . . breach of fiduciary duty claims are barred by the gist of the action doctrine if there are 'no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of' the parties' contractual agreements."  Certainteed Ceilings, 2015 WL 410029, at *9, citing Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 621 (E.D. Pa. 2010); Cunningham Lindsey U.S., Inc. v. Bonnani, No. 13-2528, 2014 WL 1612632, at *7 (M.D. Pa. Apr. 22, 2014); Hill v. Best Med. Int'l, Inc., No. 07-1709, 2011 WL 5082208, at *31 (W.D. Pa. Oct. 25, 2011); AMG Nat'l Trust Bank v. Ries, No. 06-4337, 2011 WL 6840586, at *5 (E.D. Pa. Dec. 29, 2011).  The courts agree that dismissals under the gist of the action doctrine should take care not to preclude a party's right to plead claims in the alternative, USG Ins. Services, Inc. v. Bacon, No. 16- 01024, 2016 WL 6901332, at *7 (W.D. Pa. Nov. 22, 2016).

Courts applying these standards to motions to dismiss have continued to reach divergent results based on the particular facts of the case.  For example, in Freedom Medical v. Gillespie, the plaintiff employer claimed that former employees had stolen its inventory and business opportunities and were liable for both breach of contract and breach of fiduciary duty.  634 F. Supp. 2d 490, 496 (E.D. Pa. 2007).  The defendant former vice president of plaintiff sought dismissal of the breach of fiduciary duty claim under the gist of the action doctrine, arguing that his duty arose from his employment contract.  Id. at 516–17.  The court, however, noted that Pennsylvania law "imposes a common law duty on an employee not to use or disclose trade secrets obtained in the course of a confidential employment relationship."  Id. at 517, citing

Christopher M's Hand Poured Fudge, Inc. v. Hennon, 699 A.2d 1272, 1276 (Pa. Super. Ct. 1997). It also found that "[a] confidential relationship will also give rise to fiduciary duties under Pennsylvania law." Id., citing Basile v. H & R Block, Inc., 777 A.2d 95, 101–02 (Pa. Super. Ct. 2001) ("[A] confidential relationship and the resulting fiduciary duty may attach wherever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest."). The court concluded that the complaint sufficiently alleged that the vice president had a confidential relationship with his former employer which could, depending on the facts, "give rise to independent duties to refrain from disclosing or misappropriating trade secrets or from breaching a fiduciary duty." Id. at 517.

Similarly, in USG Insurance Services, Inc. v. Bacon, No. 16-1024, 2016 WL 6901332 (W.D. Pa. Nov. 22, 2016), the court declined to grant a motion to dismiss a fiduciary duty claim under the gist of the action doctrine. The court found that plaintiff's claim stated at least one factual allegation that did not stem from his employment agreement: the plaintiff employer alleged that the defendant failed "to perform his job responsibilities in an adequate manner before resigning." Id. at *9. Moreover, the amended complaint contained a "plethora of factual allegations demonstrating how [the defendant's] position with [plaintiff] gave rise to fiduciary duties separate and apart from [the defendant's] obligations under the Agreement." Id. Although the court found "substantial overlap" between the breach of contract and breach of fiduciary duty claims, it remarked that the "breach of fiduciary duty claim states enough distinct facts to give it a legal basis separate and apart from the Agreement." Id.

By contrast, in Certainteed Ceilings Corp. v. Aiken, the court dismissed a breach of fiduciary duty claim under the gist of the action doctrine. 2015 WL 410029. The plaintiff

company made only one factual allegation supporting its claim for breach of fiduciary duty against a defendant employee: that the employee disclosed confidential information and trade secrets. Id. at *10. That identical conduct was alleged to be a breach of the parties' non-compete agreement. Id. The court found the breach of fiduciary claim barred because (1) the breach of fiduciary duty claim did not allege any facts that transcended the employee's obligations under the parties' agreement; and (2) the employer did not make any factual allegations giving rise to a fiduciary duty under Pennsylvania law besides a sole assertion that the employee had been "in a position of trust and confidence." Id. at *11.

Likewise, in Brown & Brown, Inc. v. Cola, the plaintiff company alleged that defendant employees breached their fiduciary duty when they planned and organized a business activity to compete with the company and solicited the company's customers "in violation of their contractual restrictions" and in "breach[ of] their [e]mployment [a]greements." 745 F. Supp. 2d at 620–21. The court found that the complaint's allegations made evident that the source of the employees' duties was the employment agreement. Id. at 621. Because the alleged breaches were inextricably intertwined with the employees' contractual obligations, the court concluded the breach of fiduciary duty claims were barred under Pennsylvania's gist of the action doctrine. Id.

Against this legal backdrop, I find that the gist of the action doctrine clearly bars the plaintiff's breach of fiduciary duty claim for two reasons. First, as in Certainteed Ceilings and Brown & Brown, the acts that form the basis for the breach of fiduciary duty/breach of loyalty claim are the identical acts underlying the breach of contract action. The breach of fiduciary claim premises liability on the Sales Consultants (a) misuse of DePuy Synthes' time, resources, information, products and systems in order to compete with DePuy Synthess and benefit Globus

and themselves; (b) exploitation of their access to DePuy Synthes' computers and systems; (c)

usurpation of customer relationships belonging to DePuy Synthes to benefit Globus and

themselves; and (d) solicitation of each other to resign from DePuy Synthes to join Globus.

Compl. ¶¶ 84–92. These alleged violations mirror, in almost identical fashion, the obligations of

the employment agreements which form the basis of the breach of contract claim. Specifically,

the complaint alleges that the Sales Consultants' employment agreements restrict any disloyal,

competitive and potentially harmful activity or interference with DePuy Synthes' customer or

employee relationships during the Sales Consultants' employment with DePuy Synthes, Compl.

¶¶ 48(a), 60; bar the Sales Consultants from using their access to DePuy Synthes' systems and

confidential information for the benefit of a competitor or themselves, Compl. ¶¶ 48(d), 58, 62;

prohibit any direct or indirect contact, solicitation or servicing of DePuy Synthes customers

during their employment or for eighteen months following their termination, Compl. ¶¶ 48(c),

59; and preclude the recruitment or solicitation of other DePuy Synthes employees to join a

competitor. Compl. ¶ 48(a), 60. As in Brown & Brown, plaintiff has identified no breaches of

fiduciary duty that "transcend or exist outside of" the Sales Consultants' employment

agreements. Quite to the contrary, the complaint itself expressly alleges that "[t]he Employment

Agreements . . . restrict any disloyal, competitive, and potentially harmful activity or interference

with DePuy Synthes' customer or employee relationships during the Sales' Consultants'

employment with DePuy Synthes, *specifically defining the scope of their fiduciary obligations to*

*DePuy Synthes*." Compl. ¶ 60 (emphasis added). The complaint does not identify any obligation

not contemplated by the Sales Consultants' employment agreements. Accordingly, the fiduciary

duties in question are inextricably intertwined with, and not collateral to, the employment

agreements in question.

Moreover, unlike in USG Insurance and Freedom Medical, the complaint does not allege that the Sales Consultants' positions with DePuy Synthes gave rise to fiduciary duties separate and apart from their obligations under the contracts. For example, in USG Insurance, the court found that the defendant's current high-level position gave rise to unique fiduciary duties not encompassed by the employment agreement he signed when he was hired eight years earlier. 2016 WL 6901332, at * 9. Similarly, in Freedom Medical, the defendant was the vice president of the plaintiff and "occupied a trusted, central role" in plaintiff's affairs, which gave rise to an independent fiduciary duty to refrain from theft of inventory and business opportunities from the plaintiff. 634 F. Supp. 2d at 517. By contrast, in this case, the complaint alleges only that Foley, Leary and Valeri were hired as sales consultants. Compl. ¶¶ 35, 37, 39. DePuy Synthes has not put forth any factual allegations showing that their positions created a fiduciary relationship. In fact, the complaint explicitly notes that the Sales Consultants' access to DePuy Synthes's confidential information was not given solely as a result of their positions, but rather, like all other DePuy Synthes sales consultants, was predicated on their execution of the employee agreements. See Compl. ¶ 47 ("To protect all of these investments as well as DePuy Synthes' Customer relationships and good will, DePuy Synthes required the Sales Consultants, like other DePuy Synthes sales employees, to enter into the Employment Agreements as a condition of their employment with DePuy Synthes."); see generally Certainteed Ceilings, 2015 WL 410029, at *11 ("So even if [defendant] was acting as [plaintiff's] agent, he was allowed to do so only because he signed the Noncompete Employee Agreement and that agreement established the terms of his agency.").

In an effort to avoid dismissal of its breach of fiduciary duty/duty of loyalty claims, plaintiff offers several alternative arguments. First, it contends that because defendants contest

the scope of the employment agreements, plaintiff is entitled to plead tort claims in the alternative. It argues that defendants' failure to acknowledge the plain terms of the employment agreements make this case analogous to situations where parties deny the existence of an agreement but simultaneously use it to invoke the gist of the action doctrine. In such cases, the courts have found that a defendant cannot seek to dismiss a plaintiff's contract claims by claiming that there was no contract, while at the same time contending that contract claims preclude the tort claims under the gist of the action doctrine theory. See Pl.'s Resp. Opp'n Mot. to Dismiss, Dkt. No. 21, 11–12. Instead, courts have permitted pleading in the alternative at this juncture.

This argument is inapplicable to the present matter. Plaintiff is correct that many courts have been reluctant to apply the gist of the action doctrine to dismiss tort claims where the existence of the contract is still in question. See, e.g., Toledo Mack Sales & Servs., Inc. v. Mack Trucks, Inc., 530 F.3d 204, 229 n.18 (3d Cir. 2008); M.H. Rydek Elecs., LLC v. Zober Indus., Inc., No. 07-3885, 2007 WL 3407130, at *2 (E.D. Pa. Nov. 15, 2007); DeAngelo Bros., Inc. v. Long, No 05-0800, 2005 WL 1309037, at *4 (M.D. Pa. June 1, 2005). Unlike these cases, however, defendants in this case do not challenge either the existence or the scope of the employment agreements. In fact, both defendants' motion to dismiss and their response to the preliminary injunction motion presume the validity of the employment agreements. Defendants merely challenge whether plaintiff has plausibly alleged that defendants breached the obligations set forth in those agreements. Such arguments do not preclude operation of the gist of the action doctrine with respect to overlapping tort claims. See Bull Int'l, Inc. v. MTD Consumer Grp., Inc., 654 F. App'x 80, 96, 103 (3d Cir. 2016) (holding that it was proper for the district court to dismiss both (a) the breach of contract claim on the ground that defendant breached no terms of

contractual relationship with plaintiff and (b) the tort claims under the gist of the action doctrine).

Second, plaintiff argues that I should decline to dismiss the breach of fiduciary duty claim at this juncture because dismissing this claim will have "no appreciable impact on discovery or the scope of liability." Pl.'s Mem. Supp. Opp'n Mot. to Dismiss, Dkt. No. 21, 9. This argument is meritless. Merely because a legally invalid claim does not affect the discovery burdens or expand the amount of a party's liability does not mean that such a claim should be permitted to remain in the complaint. In this matter, the breach of fiduciary claim against the Sales Consultants is simply a restatement in tort of the breach of contract claims against these same defendants, which, in turn, bars it under the gist of the action doctrine. As the breach of fiduciary duty claim is not legally viable, it must be dismissed from the case. [2]

## II.    Breach of Contract Claims

Defendants next seek dismissal of plaintiff's claim for breach of the employment agreement. For the following reasons, I will not dismiss this claim.

---

[2]    Plaintiff also contends that the gist of the action doctrine should not apply to bar claims at the motion to dismiss phase and should be left for determination at a later phase of the litigation. Nonetheless, "there is precedent in this Court for invocation of the gist of the action doctrine at that stage of the litigation in a 12(b)(6) dismissal." Metro Auto. Sales v. Alfred Stein, Inc., No. 05-4721, 2006 WL 237505, at *3, citing Owen J. Roberts Sch. Dist. v. HTE, Inc., No. 02-7830, 2003 WL 735098 (E.D. Pa. Feb. 28, 2003). Many cases from within this Circuit have dismissed claims under the gist of the action doctrine at the Rule 12(b)(6) stage. See, e.g., Bryan's Quality Plus, LLC v. Shaffer Builders, Inc., No. 07-2311, 2008 WL 3523935, at *5 (E.D. Pa. Aug. 12, 2008) (dismissing, pursuant to Rule 12(b)(6), plaintiff's fraud and misrepresentation claims under the gist of the action doctrine); KSM Assoc., Inc. v. ACS State Healthcare, LLC, No. 05-4118, 2006 WL 847786, at *4 (E.D. Pa. Mar. 30, 2006) (dismissing, on Rule 12(b)(6) motion, fraud counterclaim under the gist of the action doctrine); Freedom Props., L.P. v. Lansdale Warehouse Co, Inc., No. 06-5469, 2007 WL 2254422, at *6 (E.D. Pa. Aug. 2, 2007) (granting, based on gist of the action doctrine, Rule 12(b)(6) motion to dismiss fraudulent inducement and negligent misrepresentation claims based on plaintiff's failure to perform its contractual duty).

Count II of plaintiff's complaint sets forth the breach of contract claim, in pertinent part, as follows:

97. The Employee Agreements prohibit the Sales Consultants from, among other things set forth above and in the Employee Agreements, directly and/or indirectly soliciting DePuy Synthes' Customers; disclosing or using DePuy Synthes' confidential, proprietary, and trade secret information; or otherwise competing with DePuy Synthes in their DePuy Synthes Territories. . . .

98. The Sales Consultants have breached, and threaten to continue to breach their Agreements as a result of their new employment with Globus, DePuy Synthes' direct competitor and a "COMPETITOR" as defined in the Employment Agreements.

99. Despite initially assuring DePuy Synthes that they would honor DePuy Synthes' two-week notice and transition policy and the obligations in their Employee Agreement, the Sales Consultants reneged on their assurances and left the employment of DePuy Synthes just one day after tendering their resignations.

100. The Sales Consultants' failure to provide DePuy Synthes with two-weeks' notice of their resignation prevented DePuy Synthes from effectively transitioning and covering the accounts for which the Sales Consultants were responsible in violation of their obligations of good faith and fair dealing.

101. Upon information and belief, the Sales Consultants acted in a coordinated fashion to resign collectively from DePuy Synthes and join Globus, where they have solicited, and plan to continue to solicit, DePuy Synthes' Customers in violation of the Employment Agreements.

102. Upon information and belief, the Sales Consultants informed DePuy Synthes' Customers of their intent to join Globus prior to their resignations, solicited DePuy Synthes' Customers prior to their resignations regarding Globus and Globus' competing products, and discussed explicitly and/or implicitly the Customers' use, potential use, or review of Globus's competing products.

103. Upon information and belief, the Sales Consultants' pre-resignations solicitations of DePuy Synthes Customers caused several surgical cases previously scheduled for DePuy Synthes' spine products to convert to Globus on or after February 6, 2017.

104.     Upon information and belief, the Defendants intend to, and have already begun to, directly and indirectly solicit and service Customers from their assigned DePuy Synthes territories and with whom that [sic] had contact or for whom they had responsibility during the last eighteen (18) months of their employment with DePuy Synthes, including by working through each other and with third parties to do that which the Employee Agreements prohibit each of them from doing directly.

105.     Upon information and belief, the Sales Consultants are employed by Globus within the geographic territory covered by their former DePuy Synthes team in violation of the Agreements They are also in violation of the non-competition restrictions in the Agreements because they are employed by Globus in positions and in locations in which they can directly and indirectly harm DePuy Synthes' [sic] by the use or disclosure of DePuy Synthes' Confidential Information, the use of their specialized training, and the use of DePuy Synthes' Customer relationships and goodwill.

106.     Upon information and belief, the Sales Consultants have used and/or inevitably will use or continue to use DePuy Synthes' confidential information in the course of their unlawful competition with DePuy Synthes in violation of the Employee Agreements.

107.     Upon information and belief, the Sales Consultants have disclosed and/or inevitably will disclose DePuy Synthes' confidential information in the course of their unlawful competition with DePuy Synthes in violation of the Employee Agreements.

108.     Upon information and belief, the Sales Consultants have used and/or inevitably will use DePuy Synthes' Customer relationships and/or goodwill in the course of their unlawful competition with DePuy Synthes in violation of the Employee Agreements[.]

109.     Consistent with their application to direct *and* indirect competition, the scope of the Sales Consultants' non-competition obligations in the Agreement encompasses not only the geographic territories to which they were assigned and in which they worked collaboratively as a team but  also their work for a competitor such as Globus in any other position or in any other location (*i.e.*, including locations outside of their former territories and positions purportedly managing or covering customer accounts outside of their former territories) in which they could disadvantage DePuy

Synthes through the use or disclosure of confidential information, the use of their specialized training, and/or the use of DePuy Synthes' Customer relationships and goodwill. . . .

Compl. ¶¶ 97–109.

Defendants now argue that these allegations rely upon mere speculation and conclusory statements. They note that every paragraph in support of that claim is alleged "[u]pon information and belief" and is not supported by a single fact, except for the allegation that, on February 6, 2017, the day the Sales Consultants started with Globus Medical, "several surgical cases that had previously been scheduled for the use of DePuy Synthes' spine products were converted to Globus." Compl. ¶ 71. That averment, however, is not accompanied by any factual allegation that the Sales Representatives caused the conversion of those cases. The remainder of the complaint, according to defendants, is devoid of factual content, failing to identify customers that have been solicited or confidential information that was used. Defendants conclude that the absence of such factual allegations deprives the claim of the requisite facial plausibility required under Iqbal and Twombly.

While I agree that the complaint is light on substantive factual allegations, I find that it sufficiently defines the contours of the breach of contract claim against defendants so as to survive Rule 12(b)(6) scrutiny. First, as to the "information and belief" allegations, the Court of Appeals has explained that pleading upon information and belief is permissible "[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control"—so long as there are no "boilerplate and conclusory allegations " and "[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible." McDermott v. Clondalkin Grp., Inc., 649 F. App'x 263, 267–68 (3d Cir. 2016) (quotations omitted). Indeed, the Court of Appeals has acknowledged that multiple federal

appellate courts "accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession." Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 107 n.31 (3d Cir. 2015), citing Carolina Cas. Ins. Co. v. Team Equip., Inc., 741 F.3d 1082, 1087 (9th Cir.2014); Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co., 631 F.3d 436, 442–43 (7th Cir. 2011); Med. Assur. Co. v. Hellman, 610 F.3d 371 (7th Cir. 2010); Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010). In these circumstances, allegations of fact pled "upon information and belief" are entitled to the same presumption of truth as other factual allegations. McDermott, 649 F. App'x at 267–68.

Taking as true the allegations of the complaint, including those made "on information and belief," I must next determine whether the complaint sets forth sufficient facts to establish a plausible claim that the Sales Consultants breached their employment agreements. I find that they do. Plaintiff alleges that the Sales Consultants all signed employment agreements that (a) prohibited them from competing with or impairing DePuy Synthes' business during their employment; (b) prohibited them from competing directly or indirectly with DePuy Synthes for eighteen months after termination of their employment; (c) prohibited them from contacting, soliciting or servicing any DePuy Synthes customers with which they had contact during their employment for eighteen months after termination of their employment; (d) prohibited them from using or disclosing DePuy Synthes' confidential and customer information; and (e) required them to give DePuy Synthes two-weeks' notice of a resignation. Compl. ¶¶ 48, 50–63. Plaintiff then goes on to describe, albeit in generalized fashion, the acts the Sales Consultants took in violation of those provisions. Specifically, in violation of the two-week notice and transition period, the Sales Consultants submitted their resignations on February 2, 2017 and departed DePuy Synthes on February 3, 2017, leaving plaintiff "without effective cover and transition" for

the accounts in the Consultants' territories.  Compl. ¶¶ 66–67, 72.  Moreover, in violation of their covenant not to compete with DePuy Synthes for a period of eighteen months after their resignation, the Sales Consultants allegedly became employed by Globus Medical in positions and locations that directly compete with DePuy Synthes.  Id. ¶ 78.  Finally, the Sales Consultants allegedly knew of their plans to leave DePuy Synthes in February 2016, yet did not resign until February 2017, during which time they maintained access to plaintiff's confidential information and customer relationships.  Id. ¶ 69.  In turn, they violated their contractual duty not to compete with DePuy Synthes during their employment by soliciting DePuy Synthes customers on behalf of Globus Medical.  Id. ¶ 81.  All of these allegations are more than mere recitals of the elements of the claim; rather they put forth factual assertions that, if ultimately proven to be true, would give rise to a valid breach of contract claim.

In a further attempt to undermine this claim, defendants contend that the missing detail in the complaint does not result from plaintiff's lack of access to it, but rather because it does not exist.  They go on to argue that these facts would have been easily attainable by questioning the surgeons or attending staff whose cases were converted Globus Medical, by obtaining communications or declarations from customers who may have been contacted by the Sales Consultants or reviewing the outgoing emails from the Sales Consultants' DePuy Synthes email accounts.  Defendants additionally dispute any notion that these facts are peculiarly within their control, attaching complaints from other similar cases brought by DePuy Synthes in which it was able to include numerous specific factual allegations of misconduct.

The mere fact that plaintiff could have provided more detail in its complaint and has been able to set forth more detailed allegations in past similar cases does not create a legal obligation for it to do so in this case.  Plaintiff need only comply with Federal Rule of Civil Procedure 8,

which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8, and the Twombly/Iqbal standards, which require well-pled factual allegations plausibly giving rise to an entitlement to relief.  The allegations of the complaint meet those requirements.  Contrary to defendants' suggestion, plaintiff was not required to interview its current or former customers, subpoena phone records or engage in a forensic review of its computer systems in order to include more detail in the complaint.  Such tasks remain the function of discovery.  To the extent that plaintiff is subsequently unable to adduce evidentiary support for the specific factual allegations made against defendants in the complaint, defendants are free to move for summary judgment.  For purposes of the present motion, however, I find that the breach of contract claim survives Rule 12(b)(6) scrutiny.

## III.    Aiding and Abetting Breach of Fiduciary Duty

Defendants next seek dismissal of plaintiff's aiding and abetting a breach of fiduciary duty claim.  Having already dismissed plaintiff's underlying breach of fiduciary duty claim, I will likewise dismiss this claim.[3]

Aiding and abetting a breach of fiduciary duty under Pennsylvania law requires: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.

---

[3]    Although the Pennsylvania Supreme Court has yet to recognize this tort, the Pennsylvania Commonwealth Court has explicitly recognized it as a viable cause of action.  Koken v. Steinberg, 825 A.2d 723, 731–32 (Pa. Commw. Ct. 2003).  Similarly, "[t]he vast majority of district courts in this Circuit have reached the same conclusion."  Chicago Title Ins. Co. v. Lexington & Concord Search and Abstract, LLC, 513 F. Supp. 2d 304, 318 (E.D. Pa. 2007), citing Reis v. Barley, Snyder, Senft & Cohen, LLC, No. 05-01651, 2007 WL 960046, at *11 (E.D. Pa. Mar. 30, 2007); Adena, Inc. v. Cohn, 162 F. Supp. 2d 351, 357–58 (E.D. Pa. 2001); Stone St. Serv., Inc. v. Daniels, No. 00-1904, 2000 WL 1909373, at *3 (E.D. Pa. Dec. 29, 2000); Pierce v. Rossetta Corp., No. 88–5873, 1992 WL 165817, at *6–9 (E.D. Pa. June 12, 1992).  Upon review of the applicable jurisprudence, I am likewise persuaded that the Pennsylvania Supreme Court would recognize aiding and abetting breach of a fiduciary duty as a viable cause of action.

Chicago Title Ins. Co., 513 F. Supp. 2d at 318, citing Koken, 825 A.2d at 732. As set forth

above, plaintiff's breach of fiduciary duty claim must be dismissed under the gist of the action

doctrine. Absent an underlying breach, plaintiff cannot establish the first element of an aiding

and abetting claim. Therefore, I will dismiss this claim with prejudice.

## IV.      Tortious Interference With Existing or Prospective Business Relations

In Count IV of the complaint, plaintiff sets forth two claims for tortious interference with

existing or prospective business relations. Pennsylvania courts, following the Restatement

(Second) of Torts, define the tort of intentional interference with existing contractual relations as:

> One who intentionally and improperly interferes with the performance of a
> contract (except a contract to marry) between another and a third person by
> inducing or otherwise causing the third person not to perform the contract, is
> subject to liability to the other for the pecuniary loss to the other from the third
> person's failure to perform the contract.

Binns v. Flaster Greenberg, P.C., 480 F. Supp. 2d 773, 778 (E.D. Pa. 2007), quoting Adler,

Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978). In order to

prevail on a claim for interference with contractual relations, the plaintiff must plead and prove

four elements: (1) the existence of a contractual relation; (2) the defendant's purpose or intent to

harm the plaintiff by preventing the relation from occurring; (3) the absence of any privilege or

justification on the part of the defendant; and (4) damages resulting from the defendant's

conduct. CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc., 357 F.3d 375, 384 (3d

Cir. 2004) (citation omitted).

Plaintiff's tortious interference claim rests on two separate theories. The first alleges that

defendants tortiously interfered with DePuy Synthes's customer relationships on behalf of and

for the benefit of Globus Medical. The second contends that defendants tortiously interfered

with the Sales Consultants' employment contracts by soliciting one another to resign from DePuy Synthes employment and join Globus. I address each claim individually.

### A.    Tortious Interference With Customer Relationships

Plaintiff's first tortious interference claim alleges that the Sales Consultants tortiously interfered with its customer relationships on behalf of and for the benefit of Globus and to the detriment of DePuy Synthes. Compl. ¶ 123. I find this claim barred by the gist of the action doctrine.[4]

As set forth above, the gist of the action doctrine bars tort claims "based on [a] party's actions undertaken in the course of carrying out a contractual agreement . . . when the gist or gravamen of the cause of action . . . although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." Bruno, 106 A.3d at 53. "A tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it." Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008).

In this case, plaintiff alleges that the Sales Consultants tortiously interfered with its customer relationships without privilege or justification and with a specific intent to injure plaintiff. As described above, however, the Sales' Consultants' employment agreements contain a specific provision stating that, during their employment with DePuy Synthes and for a period of eighteen months after their last day of employment, they:

> [S]hall not, directly or indirectly, contact, call upon, solicit
> business from, sell to, or render services to, or assist others in

---

[4]    Plaintiff does not appear to bring this claim against Globus Medical. To the extent it intends to do so, however, I find that Globus Medical's alleged tortious action—soliciting existing and potential future customers of DePuy Synthes to do business with Globus Medical instead—falls squarely within the well-established "competitor's privilege" set forth in § 768 of the Restatement (Second) of Torts. I discuss that privilege in more detail below.

> contacting, calling upon, soliciting business from, selling to, or rendering services to, any CUSTOMER: (a) in connection with the sale, support, service, or use of any product or service that resembles or competes with or that may be submitted for one that is being sold, under development or acquired by any COMPANY; (b) if [they] are working with, for, or as a COMPETITOR of any COMPANY; and/or (c) if [their] activities could damage or interfere with the CUSTOMER relationships of any COMPANY or divert business from such CUSTOMERS to a competitor.

Compl. ¶ 59. Thus, the Sales Consultants' alleged solicitation of and interference in plaintiff's existing and prospective business relations with plaintiff's customers remain "inextricably interwoven with the contractual duties at issue." In turn, any such tort allegation is governed purely by the employment agreements and barred by the gist of the action doctrine. I will therefore dismiss this claim with prejudice.

### B. Tortious Interference With Employee Contracts

The second portion of plaintiff's claim contends that all defendants have tortiously interfered with DePuy Synthes' contractual relationships with each of the Sales Consultants by encouraging and causing the Sales Consultants to breach their contractual obligations to DePuy Synthes. While I find that this claim is barred as against the Sales Consultants, I decline to dismiss the claim as against Globus Medical.

To the extent plaintiff brings this claim against the Sales Consultants alleging that they coerced one another to leave plaintiff's employment and work for Globus Medical, the claim is likewise precluded by the gist of the action doctrine.[5] According to the complaint, the Sales Consultants' employment agreements contained a provision which provided, in part, "you agree

---

[5]     Plaintiff argues that defendants do not seek dismissal of this claim against the Sales Consultants, meaning that it must remain intact. Although defendants' motion on this point is not artfully argued, I construe their position to be that all tortious interference claims against the Sales Consultants are barred by the gist of the action doctrine. Plaintiff appears to recognize as much by arguing in an earlier section of its brief that the tortious interference claims are not barred by gist of the action. Pl.'s Mem. Supp. Mot. to Dismiss, Dkt. No. 21, at 10.

that during our employment, you will not, directly or indirectly, . . . engage in recruitment or solicitation of other employees of your EMPLOYER or any COMPANY to join a COMPETITOR."  Compl. ¶ 60.  As the tortious interference claim is completely subsumed by this provision of the contract and has no independent basis in social policy, plaintiff may not raise it as a separate tort cause of action here.

To the extent plaintiff brings this claim against Globus Medical, alleging that Globus Medical tortiously interfered with DePuy Synthes' employment agreements with the Sales Consultants, I find that the claim survives the motion to dismiss.  Defendants contend that this claim is barred by the business competitors' privilege, set forth in section 768 of the Restatement (Second) of Torts, which provides:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if (a) the relation concerns a matter involved in the competition between the actor and the other and (b) the actor does not employ wrongful means and (c) his action does not create or continue an unlawful restraint of trade and (d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768; see also Accumed LLC v. Advanced Surgical Servx., Inc., 561 F.3d 199, 215 (3d Cir. 2009) ("Pennsylvania has adoption section 768 of the Restatement (Second) of Torts, which recognizes that competitors, in certain circumstances, are privileged in the course of competition to interfere with others' prospective contractual relationships."), citing Gilbert v. Otterson, 550 A.2d 550, 554 (Pa. Super. Ct. 1988).   They go on to argue that requirements (a), (c) and (d) are easily satisfied, leaving the only question as whether Globus used "wrongful means."  On that point, defendants contend that the Sales Consultants were at-

will employees, meaning that Globus Medical was free to compete for their services and offer them employment.

This argument, however, disregards a crucial caveat to the business competitors' privilege. Although the privilege applies to existing contracts that are terminable at will, the comment to the Restatement limits the privilege with respect to certain employment contracts:

> An employment contract . . . may be only partially terminable at will. Thus it may leave the employment at the employee's option but provide that he is under a continuing obligation not to engage in competition with his former employer. Under these circumstances a defendant engaged in the same business might induce the employee to quit his job, but he would not be justified in engaging the employee to work for him in an activity that would mean violation of the contract not to compete.

Rest. (Second) Torts § 768, cmt. i. In other words, "the competitor's privilege does not shield a company from tortious interference with an employee bound by a covenant not to compete." Symphony Health Solutions Corp. v. IMS Health Inc., No. 13-4290, 2014 WL 4063360, at *2 (E.D. Pa. Aug. 15, 2003), citing Reading Radio Inc. v. Fink, 833 A.2d 199, 209 (Pa. Super Ct. 2003) (explaining that while "an at-will employee may not sue a third-party for tortious interference with a presently existing at-will employment contract . . . [i]nterference with a covenant not to compete . . . is actionable in tort, despite an employee's 'at-will employment' status."); see also Acclaim Sys., Inc. v. Infosys, Ltd., No. 13-7336, 2015 WL 4257463, at *4 (E.D. Pa. July 14, 2015) (holding that where the former employer alleged that it had valid non-compete agreements with its former employees and new employer was aware of those agreements but nonetheless acted to hire the former employees to work for a competitor doing the same job, the plaintiff had alleged a plausible claim of tortious interference).[6]

---

[6]     The cases relied on by defendants are inapplicable as they did not involve similar factual scenarios of at-will employees who remained under non-terminable non-compete and non-

In what is perhaps a retrospective concession that comment (i) to section 768 limits application of the competitors' privilege, defendants argue, in their reply brief, that "there are no factual allegations that Globus did anything to induce the Sales Representatives' alleged breach of [their restrictive covenants.]" Defs.' Reply Br., Dkt. No. 23, at 9. I disagree. Plaintiff alleges that Globus Medical has had a "pattern and practice of poaching DePuy Synthes employees and assisting them in violating their agreements with and obligations to DePuy Synthes," Compl. ¶ 30; "[t]he recruitment and hiring of the Sales Consultants in February 2017 are—at least insofar as DePuy Synthes is aware—the most recent employment of Globus' unlawful practice of hiring DePuy Synthes employees in violation of their contractual and common law obligations to DePuy Synthes," Compl. ¶ 33; "[u]pon information and belief, Globus was aware of the Sales Consultants' contractual notice and transition obligations before and after they commenced employment with Globus and inhibited the Sales Consultants' compliance with those obligations," Compl. ¶ 70; "upon information and belief, Globus recognized an opportunity to poach a significant portion of DePuy Synthes' New Jersey spine sales force in order to convert DePuy Synthes' business, Customer relationships, and goodwill to Globus and to exploit the Sales Consultants' training and access to DePuy Synthes' confidential information," Compl. ¶ 76; and "[u]pon information and belief, the Sales Consultants are employed by Globus within the geographic territory covered by their former DePuy Synthes team in violation of the

---

solicitation covenants after ending their employment with DePuy Synthes. See Assembly Tech. Inc. v. Samsung Techwin Co., Ltd., 695 F. Supp. 2d 168, 173 (E.D. Pa. 2010) (employees were at-will and were not under any employment agreements containing non-terminable non-compete and non-solicitation clauses); Albee Homes, Inc. v. Caddie Homes, Inc., 207 A.2d 768, 771 (Pa. 1965). While defendants cite Assembly Technology for the proposition that "employers are not prohibited from offering employment to another's at will employees," 695 F. Supp. 2d at 180, that principle does not apply where the solicited employee is under a continuing contractual duty not to compete with his former employer and that contract will be breached by the new employer's hiring of the employee.

Agreements." Compl. ¶ 78. These allegations clearly state a plausible claim for tortious

interference with existing contracts. Accordingly, I will deny the motion to dismiss this claim.

## V. Unfair Competition

Count V of the complaint alleges unfair competition under Pennsylvania law.

Defendants move to dismiss this claim. I grant this motion with respect to the Sales Consultants,

but deny it as to Globus Medical.

The Pennsylvania common law tort of unfair competition is coextensive with the

definition set forth in the Restatement (Third) of Unfair Competition. See Bldg. Materials Corp.

of Am. v. Rotter, 535 F. Supp. 2d 518, 526 n.4 (E.D. Pa. 2008) (citations omitted); ID Sec. Sys.

of Canada, Inc. v. Checkpoint Sys., Inc., 249 F. Supp. 2d 622, 688 (E.D.Pa. 2003). The

Restatement (Third) of Unfair Competition provides in relevant part that:

> One who causes harm to the commercial relations of another by
> engaging in a business or trade is not subject to liability to the
> other for such harm unless:
>
> (a) the harm results from . . .
>
> . . . other acts or practices of the actor determined to be actionable
> as an unfair method of competition, taking into account the nature
> of the conduct and its likely effect on both the person seeking relief
> and the public;

Restatement (Third) of Unfair Competition § 1 (1995). The Restatement explains that "as a

general matter, if the means of competition are otherwise tortious with respect to the injured

party, they will also ordinarily constitute an unfair method of competition." Id. cmt. g (1995).

"[T]he term may not be construed 'as a virtual catch-all for any form of wrongful business

conduct' or to 'include all forms of modern business torts.'" Giordano v. Claudio, 714 F. Supp.

2d 508, 522 (E.D. Pa. 2010), quoting USX Corp. v. Adriatic Ins. Co., 99 F. Supp. 2d 593, 619

(W.D. Pa. 2000). Nonetheless, "Pennsylvania courts have recognized a cause of action for the

common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." Synthes (U.S.A.) v. Globus Med., Inc., No. 04-1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept. 14, 2005) (citations omitted).

In the present case, the complaint sets forth the unfair competition claim as follows:

> Unfairly competing with DePuy Synthes, the Defendants have engaged in a conspiracy to unlawfully divert, and have succeeded in unlawfully diverting, business away from DePuy Synthes for the benefit of Globus using DePuy Synthes' Customer relationships, good will, and confidential information and by, among other things set forth above and incorporated herein, breaching, aiding or encouraging breaches of, and tortiously interfering with the Sales Consultants' fiduciary and contractual obligations to DePuy Synthes, in order to compete unfairly with DePuy Synthes in the highly competitive medical device industry and secure, and continue to benefit from, an unfair competitive advantage not available to legitimate, lawful competitors in the industry.

Compl. ¶ 129. To the extent plaintiff intends to assert this claim against the Sales Consultants, it appears to be premised on the Sales Consultants' alleged breaches of fiduciary duties or efforts to interfere with DePuy Synthes' customer relations. As the underlying claims are barred by the gist of the action doctrine, an unfair competition claim premised on the identical actions is barred as well.[7]

To the extent plaintiff brings this claim against Globus Medical, however, the claim survives Rule 12(b)(6) review. According to the complaint, Globus Medical has actively

---

[7]     Plaintiff argues that defendants focused solely on why this claim should be dismissed against Globus Medical without providing reasons for why the claim should be dismissed as against the Sales Consultants. A plain reading of this count, however, does not reveal any action by the Sales Consultants, independent of the claims being dismissed under the gist of the action doctrine, that could otherwise support an unfair competition claim. Accordingly, I will dismiss the unfair competition claim against them as well.

recruited DePuy Synthes' employees and converted DePuy Synthes' customers by tortiously interfering with agreements and exploiting the Sales Consultants' access to DePuy Synthes' confidential information. These allegations, taken as true, could give rise to a plausible claim of unfair competition against Globus Medical. Therefore, I decline to dismiss this claim.[8]

## VI.    Civil Conspiracy

The final claim at issue is plaintiff's cause of action for civil conspiracy. Defendants contend that this claim must be dismissed because (1) plaintiff has failed to allege any type of concerted action among the defendants; (2) plaintiff has failed to allege the commission of an independent tort; and (3) the complaint does not adequately allege malice on the part of the defendants. As I find merit to the third argument, I dismiss the claim on that ground without addressing defendants' other arguments.

To state a cause of action for civil conspiracy, the plaintiff must demonstrate: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." <u>Gen. Refractories Co. v. Fireman's Fund Ins. Co.</u>, 337 F.3d 297, 313 (3d Cir. 2003) (citation and internal quotations omitted). An

---

[8]    Defendants argue that plaintiff must establish that "[t]he systematic inducing of employees" either to "leave their present employment and take work with another" has been done for the purpose of (a) "crippl[ing] and destroy[ing] an integral part of a competitive business organization rather than to obtain the services of particularly gifted or skilled employees," or (b) "for the purpose of having the employees commit wrongs, such as disclosing their former employees trade secrets or enticing away his customers, the injured employer is entitled to protection." <u>Albee Homes, Inc. v. Caddie Homes, Inc.</u>, 207 A.2d 768, 771 (Pa. 1965), <u>quoting</u> <u>Morgan's Home Equipment Corp. v. Martucci</u>, 136 A.2d 838, 847 (Pa. 1957). Aside from the fact that this is not the requisite standard for a claim of unfair competition under Pennsylvania law, the allegations of the complaint nonetheless plead that Globus Medical enticed the Sales Consultants to leave their employment with DePuy Synthes for the purpose of "convert[ing] DePuy Synthes' business, Customer relationships, and goodwill to Globus and . . . exploit[ing[ the Sales Consultants' training and access to DePuy Synthes' confidential information." Compl. ¶ 76.

"'actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.'" Levin v. Upper Makefield Twp., 90 F. App'x 653, 667 (3d Cir. 2004), quoting In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999).

Notably, "[p]roof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979). "Malice requires an allegation that the sole purpose of the conspiracy was to injure the plaintiff," and that this intent was without justification. Doltz v. Harris & Assoc., 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003). Thus, a showing that a person acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice. See Sarpolis v. Tereshko, 26 F. Supp. 3d 407, 423–24 (E.D. Pa. 2014) (declining to infer malice where complaint explicitly averred that "all parties reaped financial or career benefits, at Plaintiff's expense" as a result of the alleged conspiracy), aff'd, 625 F. App'x (3d Cir. 2016); Giordano v. Claudio, 714 F. Supp. 2d 508, 534 (E.D. Pa. 2010) ("A showing that an alleged conspirator acted for professional or business benefit will preclude a finding of malice."); Bro–Tech Corp. v. Thermax, Inc., 651 F. Supp. 2d 378, 419 (E.D. Pa. 2009) (holding that plaintiff's theory that defendants acted for their business advantage and benefit belies the notice that defendants acted purely out of malice and without a business motive, thereby precluding a civil conspiracy claim); Thompson Coal Co., 412 A.2d at 472 (noting that the intent to injure must be without justification, which cannot exist when an act is merely done "with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights"), quoting Rosenblum v. Rosenblum, 181 A. 583, 585 (Pa. 1935).

The complaint in the present case undermines any suggested inference of malice. Although the complaint contains allegations that defendants attempted to harm plaintiff's business, the complaint is also replete with allegations that defendants were simultaneously acting to benefit their own business interests. See Compl. ¶¶ 77, 86, 90, 92, 123, 129. Most notably, when setting forth the tortious interference claim—which is one of the underlying torts for the civil conspiracy—plaintiff alleges that that "upon information and belief, the prospective business from DePuy Synthes' customers was a material factor in Globus' identification and recruitment of the Sales Consultants, the Sales Consultants' decision to join Globus and to solicit DePuy Synthes' Customers, and in the Defendants' conversion of surgical cases to Globus beginning on or before February 6, 2017." Compl. ¶ 123. The complaint goes on to allege, in the conspiracy count, that "the Sales Consultants, in combination with each other and Globus, conspired to unlawfully divert, and have succeeded in unlawfully diverting, business away from DePuy Synthes for the benefit of Globus using DePuy Synthes' Customer relationships, good will, and confidential information . . ." Id., Count VI ¶ 2. Plaintiff cites RDK Truck Sales & Serv. v. Mack Trucks, Inc., No. 04-4007, 2009 WL 1441578, at *33 (E.D. Pa. May 19, 2009) for the proposition that the mere fact that the defendants' improper actions were economically beneficial to them does not preclude a civil conspiracy claim. Pl.'s Resp. Opp'n Mot. to Dismiss, Dkt. No. 21, at 21. Unlike that case, however, the complaint in this matter explicitly alleges that an aim of the conspiracy, and not merely a side effect, was to benefit Globus Medical. Such allegations belie any notion that defendants were acting solely to injure plaintiff. Therefore, I will dismiss this claim.

**CONCLUSION**

In light of the foregoing, I will grant defendants' motion to dismiss in part and deny it in part. Specifically, defendants' motion to dismiss the breach of contract claim, the tortious interference with employee contracts claim against Globus Medical and the unfair competition claim against Globus Medical will be denied. In all other respects, it will be granted with prejudice.

An appropriate Order follows.